

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

JUN   1 2006

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO

UNITED STATES OF AMERICA,          )
                                   )
        Plaintiff,           4 :   0 6 ° R 0 0 3 8 7 C E J
                                   ) No.
v.                                 )
                                   )
BETONSPORTS PLC, its predecessors, )        18 U.S.C. § 1962(d) - Racketeering
holding companies, subsidiaries and associated )   Conspiracy [Count 1, pp. 1-17]
entities; GARY STEPHEN KAPLAN, also )       18 U.S.C. § 1341 - Mail Fraud
known as Greg Champion; NEIL SCOTT )        [Count 2, p. 18]
KAPLAN, also known as Scott Kaye; LORI )    18 U.S.C. § 1084 - Transmission of
BETH KAPLAN MULTZ, also known as Beth; )    Wagers/Wagering Information
DAVID CARRUTHERS; PETER WILSON;    )        [Counts 3-12, pp. 18-19]
NORMAN STEINBERG, also known as Tom )       18 U.S.C. § 1953 - Interstate
Miller and David Norman; TIM BROWN, also )  Transportation of Gambling Para.
known as Matt Brown; DIRECT MAIL   )        [Count 13, p. 20]
EXPERTISE, INC.; DME GLOBAL        )        18 U.S.C. § 2 - Aiding and Abetting
MARKETING & FULFILLMENT, INC.;     )        26 U.S.C. § 7201 - Tax Evasion
MOBILE PROMOTIONS, INC.; WILLIAM   )        [Counts 14-16, p. 20-22]
HERNAN LENIS; WILLIAM LUIS LENIS;  )        26 U.S.C. § 7212(a) - Interference
MANNY GUSTAVO LENIS, and MONICA    )        with Administration of Internal
LENIS,                             )        Revenue Laws [Counts 17-22, pp. 22-
        Defendants.                )        23]
_____)        Forfeiture pursuant to: 18 U.S.C. §
                                            1963 [Forfeiture Count, p. 23]

## INDICTMENT

The Grand Jury charges that:

## COUNT 1
(Racketeering Conspiracy)

At all times material to this Indictment, in the Eastern District of Missouri and elsewhere:

## Introduction

1. Beginning in approximately 1992, defendant GARY STEPHEN KAPLAN (hereafter "GARY KAPLAN") and others operated an illegal sports betting business in and near New York City. After GARY KAPLAN's arrest on New York State gambling charges in May of 1993, GARY KAPLAN relocated his illegal gambling operation to Florida, continuing to take sports wagers from bettors in New York by telephone. In approximately 1995, GARY KAPLAN moved the illegal gambling business to Aruba, in the West Indies, but continued to operate primarily in the United States. To facilitate its U.S. operations, the gambling businesses established and controlled toll-free telephone services and Internet web sites, and caused these services to accept sports wagers from gamblers in the United States. In about 1996-1997, GARY KAPLAN relocated the gambling operations to Antigua, and then to Costa Rica, leaving certain aspects of the financial operations in Antigua. Through all these relocations, GARY KAPLAN and the other defendants always operated, and caused the operation of their primary revenue-producing business, illegal sports wagering, in the United States.

2. Among the first Internet gambling businesses operated by GARY KAPLAN was a computer-based sports book called the North American Sports Association International, or NASA, which evolved into BETonSPORTS.COM. GARY KAPLAN and the other defendants advertised BETonSPORTS.COM as the largest online wagering service in the world. BETonSPORTS.COM and the other gambling web sites operated by GARY KAPLAN and his co-defendants offered gamblers in the United States illegal wagering on professional and college football and basketball, as well as many other professional and amateur sporting events and contests. These Internet gambling web sites also advertised toll free telephone numbers for

2

placing sports bets.

3. In July of 2004, BETONSPORTS PLC, a holding company, was incorporated under the laws of England and the United Kingdom. Defendant GARY KAPLAN, through a holding company called Boulder Overseas, retained approximately 44% of the BETONSPORTS PLC stock. In July of 2005, defendant GARY KAPLAN sold and caused the sale of 23,000,000 shares of BETONSPORTS PLC, retaining ownership of 15% of the BETONSPORTS PLC stock through Boulder Overseas.

## The Defendants

4. Defendant GARY KAPLAN, also known as "Greg Champion" and "G," was the founder and primary operator of BETonSPORTS.COM and other Internet and telephone sports betting businesses.

5. Defendant NEIL SCOTT KAPLAN (hereafter "NEIL KAPLAN"), also known as "Scott Kaye," is defendant GARY KAPLAN'S brother. NEIL KAPLAN was an agent and/or employee of BETonSPORTS.COM, and, among other things, handled purchasing of goods and services.

6. Defendant LORI BETH KAPLAN MULTZ (hereafter "LORI KAPLAN MULTZ"), also known as "Beth," and "Beth Wilson," is GARY KAPLAN'S sister. LORI KAPLAN MULTZ was an employee and/or agent of BETonSPORTS.COM, who, among other things, arranged for advertising of the gambling web sites and telephone services.

7. Defendant DAVID CARRUTHERS was the Chief Executive Officer of BETonSPORTS.COM, and a Director of BETONSPORTS PLC.

3

8. Defendant PETER WILSON was the Media Director for BETonSPORTS.COM.

9. Defendant NORMAN STEINBERG, also known as "Tom Miller" and "David Norman" owned and operated, with defendant GARY KAPLAN, a number of Internet and telephone service gambling web sites, collectively known as the Millennium Group.

10. Defendant TIM BROWN, also known as "Matt Brown," is NORMAN STEINBERG's son-in-law, and, among other things, was an employee and/or agent of the Internet gambling web sites in the Millennium Group.

11. Defendants MOBILE PROMOTIONS, INC., DIRECT MAIL EXPERTISE, INC., and DME GLOBAL MARKETING & FULFILLMENT (referred to in a group as "the Lenis Companies"), were all Florida corporations, which operated cooperatively and shared use of bank accounts and financing. These companies provided promotional services to the illegal gambling web sites and telephone services operated by GARY KAPLAN and the other defendants.

12. Defendant WILLIAM HERNAN LENIS was an owner, officer and operator of the Lenis Companies.

13. Defendant WILLIAM LUIS LENIS is the son of WILLIAM HERNAN LENIS, and was an officer and operator of the Lenis Companies.

14. Defendant MONICA LENIS is the daughter of WILLIAM HERNAN LENIS, and was an officer and operator of the Lenis Companies.

15. Defendant MANNY GUSTAVO LENIS is the nephew of WILLIAM HERNAN LENIS, and was an employee of the Lenis Companies.

4

16. Defendant BETONSPORTS PLC is a publicly owned and traded holding company. BETONSPORTS PLC owned and operated BETonSPORTS.COM and other Internet and telephone sports gambling businesses operated illegally in the United States.

## The Enterprise

17. At least as early as 1992, and through the date of the filing of this Indictment, defendants GARY KAPLAN, NEIL KAPLAN, LORI KAPLAN MULTZ, DAVID CARRUTHERS, PETER WILSON, NORMAN STEINBERG, TIM BROWN, WILLIAM HERNAN LENIS, WILLIAM LUIS LENIS, MONICA LENIS, MANNY GUSTAVO LENIS, BETONSPORTS PLC, DIRECT MAIL EXPERTISE, INC., DME GLOBAL MARKETING FULFILLMENT & DISTRIBUTION, INC., MOBILE PROMOTIONS, INC. and others, known and unknown, constituted an "enterprise" (hereafter referred to as the "KAPLAN GAMBLING ENTERPRISE," or the "ENTERPRISE"), as defined by Title 18, United States Code, § 1961(4); that is, a group of entities and individuals associated in fact. The KAPLAN GAMBLING ENTERPRISE constituted an ongoing organization, whose members functioned as a continuing unit, for the common purpose of achieving the objectives of the ENTERPRISE. The ENTERPRISE was engaged in, and its activities affected, interstate and foreign commerce.

18. The KAPLAN GAMBLING ENTERPRISE operated a number of Internet web sites, hosted on servers located outside the United States, that did business in the United States by, among other things, offering, facilitating and conducting unlawful computer and telephone service based sports betting, and other forms of gambling. The KAPLAN GAMBLING ENTERPRISE caused the operation of toll-free telephone services to facilitate sports gambling, and take sports bets. THE KAPLAN GAMBLING ENTERPRISE created and disseminated false and fraudulent

5

advertising for its Internet gambling businesses throughout the United States.

19. In addition to the named defendants, members, associates and facilities of the KAPLAN GAMBLING ENTERPRISE included legal entities incorporated in the United States and other countries around the world. Some of these entities provided services to or otherwise supported the ENTERPRISE. The ENTERPRISE owned and controlled or had contractual rights entitling it to control domain names used to identify web sites that provided illegal gambling in the United States, or otherwise aided and abetted the ENTERPRISE's operations. These include:

(a) legal entities that operated as fronts for or supporters of the ENTERPRISE, and entities whose funding and services benefitted the ENTERPRISE's goals, included but were not limited to: BetonSports (Panama) S.A.; BetonSports (Costa Rica) S.A.; BetonSports (Antigua) Ltd. S.A.; BetonSports.com Ltd.; NASA International, Inc.; NASA Sports Books, Inc.; Millennium Sports; Mill Sports; Inversiones Millennium I y M S.A.; Corporacion Moishe; B. Holdings, Inc.; Boulder Investment; Brentail Internacional S.A.; J.S.I. Jaguar Sports International S.A.; Fergrant International S.A.; Lansford Inc.; Sports on the Internet, Ltd.; Gibraltar Sports Corp.; Infinity Sports International Corp.; Rock Island, Inc.; Bettors Trust; Best Line Sports; MVP; I Q Ludorum; Domain Choices; the International Sportsbook Council (ISBC) and the Offshore Gaming Association (OSGA).

(b) Corporate entities owned and/or controlled by ENTERPRISE members, included, but were not limited to, World Wide Credit; Barrio Holdings; Iguana Azul S.A.; Insiders Publishing; and Boulder Overseas.

6

(c) Entities operated under Internet-associated brand or trade names belonging to or controlled by
ENTERPRISE members, included but were not limited to: BETonSPORTS.COM (also
known as BetonSports, BetonSports.com and BoS.com); BoS; Bestline Sports
International; betmill.com; BetonFantasy.com; BetonSports.com; Bettorstrust.com; Blue
Grass Sports; Gibraltar Sports; Infinity Sports International; Jagbet.com; MVP Bets.com;
Millennium Sports; NASA International Sportsbook; Rock Island Sports; and
Wagermall.com.

(d) Domain names currently and formerly used to operate web sites owned and controlled by
ENTERPRISE members, or otherwise used by or related to the ENTERPRISE, included
but were not limited to those listed in Attachment A, and herein incorporated by reference.

20. A principal goal of the KAPLAN GAMBLING ENTERPRISE was to make money for
the ENTERPRISE, its employees, members and associates, by maximizing the number of
individuals in the United States who opened wagering accounts and used those accounts to place
illegal bets on sports and sporting events with ENTERPRISE-controlled telephone service and
Internet gambling web sites. It was also a goal of the ENTERPRISE to make money by
maximizing the number of individuals residing in the United States who opened wagering accounts
and gambled on casino-type games offered on ENTERPRISE-controlled Internet web sites.

21. Another goal of the KAPLAN GAMBLING ENTERPRISE was to evade the payment
of federal wagering excise taxes due to the United States from the employees, members and
associates of the ENTERPRISE.

7

## The Racketeering Conspiracy

22. Beginning no later than 1992 and continuing to the present, within the Eastern District

of Missouri and elsewhere, defendants

GARY STEPHEN KAPLAN, also known as "Greg Champion;"
NEIL SCOTT KAPLAN, also known as "Scott Kaye;"
LORI BETH KAPLAN MULTZ; also known as "Beth;"
DAVID CARRUTHERS;
PETER WILSON;
NORMAN STEINBERG, also known as "Tom Miller" and "David Norman;"
TIM BROWN, also known as "Matt Brown;"
WILLIAM HERNAN LENIS, also known as "Bill Lenis";
WILLIAM LUIS LENIS, also known as "Will Lenis";
MANNY GUSTAVO LENIS;
MONICA LENIS;
BETONSPORTS PLC, its predecessors, holding companies, and associated entities,
DIRECT MAIL EXPERTISE, a Florida corporation, its predecessors and successors;
DME GLOBAL MARKETING & FULFILLMENT, INC., a Florida corporation, its predecessors
and successors;
MOBILE PROMOTIONS, INC., a Florida corporation, its predecessors and successors,

together with other persons known and unknown, being persons employed by and associated with

the KAPLAN GAMBLING ENTERPRISE, which engaged in, and the activities of which affected,

interstate and foreign commerce, knowingly and intentionally conspired to violate Title 18, United

States Code, § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of

the affairs of the ENTERPRISE through a pattern of racketeering activity consisting of multiple

acts in violation of statutes in Missouri [Mo. Rev. Stat. §§ 572.020 and 572.030]; Florida [Fla.

Stat. ch. 849.25]; New York [N.Y.Gen. Oblig. § 5-401 and N.Y. Penal § 225.10]; New Jersey [N.J.

Stat. Ann. §2C:37-2]; Washington [Wash. Rev. Code §§ 9.46.220 to 221; and 9.46.180] and

Illinois [720 Ill. Comp. Stat. 5/28-1(a)(11)], and multiple acts indictable under:

8

(a) 18 U.S.C. § 1084 (the Wire Wager Act);

(b) 18 U.S.C. § 1341 (Mail Fraud);

(c) 18 U.S.C. § 1343 (Wire Fraud);

(d) 18 U.S.C. § 1952 (Interstate travel in aid of a Racketeering Enterprise);

(e) 18 U.S.C. § 1955 (Operation of an Illegal Gambling Business);

(f) 18 U.S.C. § 1953 (Interstate transportation of Gambling Paraphernalia); and

(g) 18 U.S.C. § 1956 (Money Laundering).

23. It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the ENTERPRISE.

### Manner, Method and Means of the Racketeering Conspiracy

24. It was part of the conspiracy that the ENTERPRISE operated Internet web site and telephone gambling services from facilities physically located in San Jose, Costa Rica. The ENTERPRISE took wagers almost exclusively from gamblers in the United States. BETonSPORTS.COM promotional media materials, prepared and distributed by the ENTERPRISE, stated that in 2003, BETonSPORTS.COM had 100,000 active players, who placed 33 million wagers, worth over $1.6 billion dollars through the BETonSPORTS.COM web site. BETonSPORTS.COM promotional media materials prepared and distributed by the ENTERPRISE stated that in 2004, BETonSPORTS.COM had more than 2,000 inbound telephone lines, computer servers capable of handling 5,600 simultaneous web transactions, and more than 2,000 employees during peak gambling times such as the months preceding the Superbowl and March Madness. BETonSPORTS.COM promotional media materials publicly available in 2004 and 2005 stated that BETonSPORTS.COM had a state-of- the-art network infrastructure, and offered illegal Internet

9

and telephone service gambling through sportsbooks, an online casino, and "proposition" bets.

BETonSPORTS.COM promotional media materials available in 2004 and 2005 stated that the web

site took in an average of 63 bets per minute, "24/7/52," 98 percent of which came from bettors in

the United States. All wagering originating in the United States which occurred on ENTERPRISE

web sites and telephone services was illegal under federal law.

25. It was part of the conspiracy that in order to increase traffic and wagering on

ENTERPRISE web sites and telephone services, the KAPLAN GAMBLING ENTERPRISE

targeted U.S. gamblers, even though soliciting and accepting bets placed on sports and sporting

events using interstate wire communications facilities was and is illegal in the United States,

except where specifically authorized by federal law. The ENTERPRISE spent millions of dollars

in the United States, advertising ENTERPRISE-controlled Internet web sites and telephone

services in magazines, sports annuals and other sports publications, on sports radio, and on

television.

26. It was part of the conspiracy that the KAPLAN GAMBLING ENTERPRISE operated

various illegal gambling businesses. The ENTERPRISE conducted illegal Internet and telephone

gambling operations throughout the United States, in violation of the laws of the United States.

The KAPLAN GAMBLING ENTERPRISE solicited millions of illegal bets on sports and sporting

events from gamblers in the United States, twenty four hours a day, three hundred and sixty five

days a year. These bets, and information related to illegal bets placed with the KAPLAN

GAMBLING ENTERPRISE-controlled entities, were transmitted via interstate and international

telephone lines, and computers connected to the Internet.

27. It was part of the conspiracy to develop a scheme to defraud gamblers in the United States, by inviting, inducing and persuading them to place bets with the KAPLAN GAMBLING ENTERPRISE through its various Internet web sites and telephone lines. As part of the scheme, the members and associates of the KAPLAN GAMBLING ENTERPRISE created and disseminated advertising throughout the United States, which falsely stated that Internet and telephone gambling on sporting events and contests was "legal and licensed." The KAPLAN GAMBLING ENTERPRISE concealed the fact that the multiple web sites and telephone services through which it offered sports and casino style gambling were all owned and operated by the ENTERPRISE, and used to conduct the ENTERPRISE's illegal gambling businesses that were in fact not legal or licensed in the United States.

28. As part of the scheme to defraud, the KAPLAN GAMBLING ENTERPRISE used the United States mail system to deliver its fraudulent print advertising, and to cause bettors in the United States to send money to ENTERPRISE-controlled entities for the purpose of placing illegal bets. The KAPLAN GAMBLING ENTERPRISE used radio and television to deliver fraudulent advertising, through broadcasts and cable casts in and across the United States.

29. As part of the scheme to defraud, the KAPLAN GAMBLING ENTERPRISE controlled, in whole or in part, two entities called the Offshore Gaming Association ("OSGA") and the International Sportsbook Council ("ISBC"). The OSGA and the ISBC were advertised and represented to gamblers in the United States as independent watchdog agencies, whose purpose was to monitor online gambling to protect the wagering public. The ENTERPRISE actually used the OSGA and ISBC web sites to direct U.S. gamblers to ENTERPRISE-controlled web and telephone gambling sites, and to inhibit loss of funds to the ENTERPRISE that might otherwise

11

occur due to customer complaints or disputes.

30. It was part of the scheme to defraud and the conspiracy that the members and agents of the KAPLAN GAMBLING ENTERPRISE instructed individuals in the United States to send, or cause money to be sent to the ENTERPRISE, for the purpose of opening one or more gambling accounts. The ENTERPRISE instructed these individuals to send the money, intended to be used to place illegal wagers, to a named recipient other than directly to the ENTERPRISE web site or telephone line.

31. Another part of the conspiracy was to have the members and associates of the KAPLAN GAMBLING ENTERPRISE use interstate and international telephone and computer wire communications to illegally accept and record millions of sports wagers from gamblers in the United States, and to transmit information facilitating the acceptance of illegal wagers by KAPLAN GAMBLING ENTERPRISE web sites and gambling telephone services.

32. It was also part of the conspiracy that members and associates of the KAPLAN GAMBLING ENTERPRISE traveled and communicated across State and national borders, in aid of the ENTERPRISE and its operations, and purchased products and services in the United States, and caused them to be shipped to Costa Rica, and other locations outside the U.S. where the ENTERPRISE had physical facilities.

33. It was also part of the conspiracy that the members and associates of the KAPLAN GAMBLING ENTERPRISE transported gambling equipment across State and national borders, in aid of the ENTERPRISE and its operations.

12

34. Another component of the conspiracy was to have the members and associates of the KAPLAN GAMBLING ENTERPRISE launder money received by the ENTERPRISE in the form of illegal wagers and fees.

35. It was part of the conspiracy that the ENTERPRISE, its members and associates, used the U.S. and private mail services and wire transfer services to send money from ENTERPRISE components outside the United States to various recipients in the United States, and from the United States to recipients outside the United States, and between locations in the United States, in order to promote the ENTERPRISE's illegal telephone and Internet gambling operations.

Overt Acts

36. In furtherance of the conspiracy, and to accomplish the objects of the conspiracy, the defendants and their co-conspirators, committed, among others, the following acts within the Eastern District of Missouri and elsewhere:

(1) On or about January 31, 2002, the KAPLAN GAMBLING ENTERPRISE  operated a telephone service and Internet gambling web site called  Millennium Sportsbook, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Millennium Sportsbook. The instructions stated that the money was to be sent from the United States to "Rod Jones" in Ecuador.

(2) On or about  February 6, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Gibraltar Sportsbook, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Gibraltar Sportsbook.  The instructions stated that the money was to be sent from the United States to "Thomas Navas" in Ecuador.

13

(3) On or about February 12, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called NASA, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with NASA. The instructions stated that the money was to be sent from the United States to "David Allen" in Belize.

(4) On or about March 8, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Gibraltar Sports, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Gibraltar Sports. The instructions stated that the money was to be sent from the United States to "Jerry Moore" in Ecuador.

(5) On or about March 8, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Millennium. The instructions stated that the money was to be sent from the United States to "Kevin Green" in Ecuador.

(6) On or about March 12, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sportsbook, and transmitted to potential and actual bettors in the Eastern District of Missouri, instructions for opening a wagering account with Millennium. The instructions stated that the money was to be sent from the United States to "Paul Rogers" in Ecuador.

14

(7) On or about March 13, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sports, and accepted an account inquiry via a telephone and Internet communication to an ENTERPRISE controlled Internet web site with the domain name of bet.wagermillennium.com.

(8) On or about April 25, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Gibraltar Sports, and accepted a sports wager via a telephone and Internet communication to an ENTERPRISE-controlled Internet web site with the domain name of bettherock.com.

(9) On or about April 25, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sports, and accepted a sports bet via a telephone and Internet communication to an ENTERPRISE-controlled Internet web site with the domain name of millsports.com.

(10) On or about June 12, 2002, the KAPLAN GAMBLING ENTERPRISE operated a telephone service and Internet gambling web site called Millennium Sports, and accepted a request via telephone to withdraw money from a wagering account held by the KAPLAN GAMBLING ENTERPRISE.

(11) Between September 1 and October 30, 2003, the KAPLAN GAMBLING ENTERPRISE mailed brochures, magazines, coupons and flyers mailed from an address in Miami, Florida, to 12430 Tesson Ferry Road, St. Louis, Missouri.

(12) Between August 2002 and September 2003, the KAPLAN GAMBLING ENTERPRISE caused fraudulent radio advertisements to be broadcast by radio stations across the country.

15

(13) Between October 2001 and January 2002, the KAPLAN GAMBLING
ENTERPRISE arranged for the telecast of a fraudulent television advertisement stating that its
gambling telephone services and web sites were "legal and licensed."

(14) Between 2001 and the date of this Indictment, the KAPLAN GAMBLING
ENTERPRISE transported and caused the transportation of gambling paraphernalia across state
boundaries, and used the equipment to induce individuals to open betting accounts with various
ENTERPRISE-controlled Internet sports gambling web sites.

(15) On or about November 24, 2003, defendant David Carruthers traveled to New York
City, and met with employees of a media relations firm used by the ENTERPRISE to promote its
operations.

(16) On or about February 20, 2004, employees, owners or agents of the Lenis Group of
companies and employees and agents of the ENTERPRISE arranged for the shipment, from
Miami, Florida to Costa Rica, of two automobiles, purchased with funds provided by the KAPLAN
GAMBLING ENTERPRISE, for use by the ENTERPRISE.

(17) On or about September 6, 2000, the KAPLAN GAMBLING ENTERPRISE caused a
check in the amount of $99,620.00 to be made out by American Media Communications, payable
to One-on-One Sports, for the purchase of advertising for ENTERPRISE-controlled Internet
gambling web sites on radio broadcasts.

(18) On or about December 11, 2000, the KAPLAN GAMBLING ENTERPRISE caused a
check in the amount of $100,000 to be sent to Standard Register Company, to purchase services
related to direct mail advertising of ENTERPRISE-controlled Internet gambling web sites.

16

(19) On or about April 11, 2001, the KAPLAN GAMBLING ENTERPRISE caused a check in the amount of $109,903.39 to be sent to Standard Register Company, to purchase services related to direct mail advertising of ENTERPRISE-controlled Internet gambling web sites.

(20) On or about September 2, 2003, the KAPLAN GAMBLING ENTERPRISE caused $90,000.00 to be sent from a bank located outside the United States via a wire transfer, to a bank account controlled by defendant DME GLOBAL located in Florida, to purchase advertising/promotional services on behalf of ENTERPRISE-controlled Internet gambling web sites.

(21) On or about August 4, 2004, the KAPLAN GAMBLING ENTERPRISE caused $61,962.00 to be sent from a bank located outside the United States via a wire transfer, to a bank account controlled by defendant DME GLOBAL located in Florida, to purchase advertising/promotional services on behalf of ENTERPRISE-controlled Internet gambling web sites.

(22) On or about December 28, 2005, BETONSPORTS PLC purchased three online sports books; MVPSportsbook, Player Super Book and V-Wager.

(23) On or about April 12, 2006, BETONSPORTS PLC owned web site BETonSPORTS.COM solicited and accepted wagers from an individual residing in the State of Washington, in violation of that State's laws.

All in violation of Title 18, United States Code, § 1962(d).

17

## COUNT 2
(Scheme to Defraud - Mail)

37. The Grand Jury re-alleges paragraphs 25, 27 and 28 above, and further charges that on or about September 1 to October 30, 2003, in the Eastern District of Missouri and elsewhere, defendants BETONSPORTS PLC and DME GLOBAL MARKETING AND FULFILLMENT, INC, for the purpose of executing and attempting to execute the scheme to defraud, did knowingly cause to be delivered by mail, from Miami, Florida, to 12430 Tesson Ferry Road, St. Louis, Missouri, brochures, magazines, coupons and flyers, all in violation of Title 18, United States Code, §§ 1341 and 2.

## COUNTS 3 to 12
(Use of a Communications Facility to Transmit Bets and Betting Information)

38. The Grand Jury re-alleges paragraphs 18, 26 and 31 above, and further charges that, on or about the dates listed below, in the Eastern District of Missouri and elsewhere, defendants GARY KAPLAN and NORMAN STEINBERG, and others known and unknown, being engaged in the business of betting and wagering, did knowingly use and cause the use of a wire communication facility, for the transmission in interstate and foreign commerce, between the State of Missouri and the country of Costa Rica, wagers on sporting events and contests, information assisting in the placing of bets and wagers on sporting events and contests, and a wire communication which entitled the recipient to receive money and credit as a result of bets and wagers, and information assisting in the placing of bets and wagers, in violation of Title 18, United States Code, §§ 1084 and 2.

18

| Count | Date | Recipient | Defendant(s) | Communication |
|---|---|---|---|---|
| 3 | Jan 31, 2002 | Millennium Sportsbook | GARY KAPLAN & NORMAN STEINBERG | Call to 800-824-1637 transmitted instructions on opening a wagering account and instructions to send money to "Rod Jones" in Ecuador. |
| 4 | Feb. 6, 2002 | Gibraltar Sportsbook | GARY KAPLAN & NORMAN STEINBERG | Call to 800-582-1381 transmitted instructions on opening a wagering account and instructions to send money to "Thomas Navas" in Ecuador. |
| 5 | Feb. 12, 2002 | NASA | GARY KAPLAN | Call to 888-999-9238 transmitted instructions on opening a wagering account and instructions to send money to "David Allen" in Belize. |
| 6 | Mar. 8, 2002 | Gibraltar Sports | GARY KAPLAN & NORMAN STEINBERG | Call to 800-582-1381 confirmed instructions to send money to "Jerry Moore" in Ecuador. |
| 7 | Mar. 8, 2002 | Millennium | GARY KAPLAN & NORMAN STEINBERG | Call to 800-824-1637 transmitted instructions to send money to "Kevin Green" in Ecuador. |
| 8 | Mar. 12, 2002 | Millennium Sportsbook | GARY KAPLAN & NORMAN STEINBERG | Call to 800-593-2915 transmitted instructions to send money to "Paul Rogers" in Ecuador. |
| 9 | Mar. 13, 2002 | Millennium Sports | GARY KAPLAN & NORMAN STEINBERG | Internet communication to bet.wagermillennium.com confirmed account balance. |
| 10 | April 25, 2002 | Gibraltar Sports | GARY KAPLAN & NORMAN STEINBERG | Internet communication to bettherock.com transmitted a bet. |
| 11 | April 25, 2002 | Millennium Sports | GARY KAPLAN & NORMAN STEINBERG | Internet communication to millsports.com transmitted a bet. |
| 12 | June 12, 2002 | Millennium Sports | GARY KAPLAN & NORMAN STEINBERG | Call to 800-824-1637 requested withdrawal of money from wagering account. |

## COUNT 13
(Interstate Transportation of Gambling Paraphernalia)

39. The Grand Jury re-alleges paragraph 33 above, and further charges that on or about

October 20, 2002, in the Eastern District of Missouri and elsewhere, defendants GARY KAPLAN,

WILLIAM HERNAN LENIS, MONICA LENIS, MOBILE PROMOTIONS, INC. and others

known and unknown, knowingly did carry and send in interstate commerce, from the State of

Florida to the State of Missouri, laptop computers and software, used, and to be used and adapted,

devised and designed  for use in bookmaking, all in violation of Title 18, United States Code, §§

1953 and 2

## COUNT 14
(Tax Evasion)

40. The Grand Jury further charges that, in the Eastern District of Missouri and elsewhere:

During the time period from on or about January 29, 2001 to on or about February 3, 2002,

BETonSPORTS.COM, BetonSports (Antigua), Millennium, Jaguar, Infinity, and Gibraltar, entities

doing business in the United States, had and received taxable wagers in the sum of approximately

$1,094,669,000.00; and defendant GARY KAPLAN, who owned and controlled

BETonSPORTS.COM, BetonSports (Antigua), Millennium, Jaguar, Infinity, and Gibraltar, well-

knowing and believing the foregoing facts, did willfully attempt to evade and defeat the said

wagering excise tax due and owing by GARY KAPLAN, as the owner and operator of

BETonSPORTS.COM, BetonSports (Antigua), Millennium, Jaguar, Infinity, and Gibraltar, to the

United States of America for said time period, by failing to make any wagering excise tax returns

on or before the last day of the month following the month the wagers were accepted, as required

by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal

20

Revenue Service said wagering excise tax, and by directing that the wagering funds be sent outside the United States, all in violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

## COUNT 15
### (Tax Evasion)

41. The Grand Jury further charges that, in the Eastern District of Missouri, and elsewhere:

During the time period from on or about February 4, 2002 to on or about February 2, 2003, BETonSPORTS.COM, BetonSports (Antigua), Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, entities doing business in the United States, had and received taxable wagers in the sum of approximately $1,228,874,000.00; and defendant GARY KAPLAN, who owned and controlled BETonSPORTS.COM, BetonSports (Antigua), Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, well-knowing and believing the foregoing facts, did willfully attempt to evade and defeat the said wagering excise tax due and owing by GARY KAPLAN as the owner and operator of BETonSPORTS.COM, BetonSports (Antigua), Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall to the United States of America for said time period, by failing to make a wagering excise tax return on or before the last day of the month following the month wagers were accepted, as required by law, to any proper officer of the Internal Revenue Service, by failing to pay to the Internal Revenue Service said wagering excise tax, and by causing and directing that the wagering funds be sent outside the United States, all in violation of Title 26, United States Code, Section 7201, and Title 18, United States Code, Section 2.

21

## COUNT 16
### (Tax Evasion)

42. The Grand Jury further charges that, in the Eastern District of Missouri, and elsewhere:

During the time period from on or about February 3, 2003 to on or about February 1, 2004,

BETonSPORTS.COM, BetonSports (Antigua), Bettorstrust, Rockisland, Jaguar, MVP,

Millennium, Gibraltar, Infinity and Wagermall, entities doing business in the United States, had

and received taxable wagers in the sum of approximately $1,235,374,000.00; and defendant GARY

KAPLAN, who owned and controlled BETonSPORTS.COM, BetonSports (Antigua), Bettorstrust,

Rockisland, Jaguar, MVP, Millennium, Gibraltar, Infinity and Wagermall, well-knowing and

believing the foregoing facts, did willfully attempt to evade and defeat the said wagering excise tax

due and owing by GARY KAPLAN as the owner and operator of BETonSPORTS.COM,

BetonSports (Antigua), Bettorstrust, Rockisland, Jaguar, MVP, Millennium, Gibraltar, Infinity and

Wagermall to the United States of America for said time period, by failing to make wagering

excise tax returns on or before the last day of the month following the month the wagers were

accepted, as required by law, to any proper officer of the Internal Revenue Service, by failing to

pay to the Internal Revenue Service said wagering excise tax, and by causing and directing that the

wagering funds be sent outside the United States, all in violation of Title 26, United States Code,

Section 7201, and Title 18, United States Code, Section 2.

## COUNTS 17 to 22
### (Interference With Administration of Revenue Laws)

43. On or about the dates listed below, in the Eastern District of Missouri and elsewhere,

defendants GARY KAPLAN, NORMAN STEINBERG and others known and unknown, did

corruptly obstruct and impede and endeavor to obstruct and impede the due administration of the

22

internal revenue laws by directing that money for opening and funding sports wagering accounts, sent from the United States to unlawful Internet and telephone service gambling businesses located outside the United States, be directed to a third party recipient, all in violation of Title 26, United States Code, Section 7212(b), and Title 18, United States Code, Section 2, as follows:

**COUNT 17** - January 31, 2002, Millennium Sportsbook employees gave instructions to an individual in the United States to send money to "Rod Jones" in Ecuador.

**COUNT 18** - February 6, 2002, Gibraltar Sportsbook employees gave instructions to an individual in the United States to send money to open a wagering account to "Thomas Navas" in Ecuador.

**COUNT 19** - February 12, 2002, NASA Sportsbook employees gave instructions to an individual in the United States to send money to open a wagering account to "David Allen" in Belize City.

**COUNT 20** - March 8, 2002, Gibraltar Sportsbook employees gave instructions to an individual in the United States to send money to open an wagering account to "Jerry Moore" in Ecuador.

**COUNT 21** - March 8, 2002, Millennium Sportsbook employees gave instructions to an individual in the Untied States to send money to "Kevin Green" in Quito, Ecuador.

**COUNT 22** - March 12, 2002, Millennium Sportsbook employees gave instructions to an individual to send money to "Paul Rogers" in Ecuador.

## RICO FORFEITURE

44. The allegations contained in Count 1 of this Indictment are hereby repeated, realleged, and incorporated by reference herein as though fully set forth at length for the purpose of alleging

23

forfeiture pursuant to the provisions of Title 18, United States Code, Section 1963. Pursuant to

Rule 32.2, Fed. R. Crim. P., notice is hereby given to the defendants that the United States will

seek forfeiture as part of any sentence in accordance with Title 18, United States Code, Section

1963 in the event of any defendant's conviction under Count 1 of this Indictment.

    45. The defendants,

> GARY STEPHEN KAPLAN, also known as "Greg Champion;"
> NEIL SCOTT KAPLAN, also known as "Scott Kaye;"
> LORI BETH KAPLAN MULTZ; also known as "Beth;"
> DAVID CARRUTHERS;
> PETER WILSON;
> NORMAN STEINBERG, also known as "Tom Miller and "Dave Brown;"
> TIM BROWN, also known as "Matt Brown;"
> WILLIAM HERNAN LENIS, also known as "Bill Lenis";
> WILLIAM LUIS LENIS, also known as "Will Lenis";
> MANNY GUSTAVO LENIS;
> MONICA LENIS;
> BETONSPORTS PLC, its predecessors, holding companies, and associated entities;
> DIRECT MAIL EXPERTISE, a Florida corporation, its predecessors and successors;
> DME GLOBAL MARKETING & FULFILLMENT, INC., a Florida corporation, its predecessors and successors; and
> MOBILE PROMOTIONS, INC., a Florida corporation, its predecessors and successors;

    i.    have acquired and maintained interests in violation of Title 18, United

States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant

to Title 18, United States Code, Section 1963(a)(1);

    ii.    have an interest in, security of, claims against, and property and contractual

rights which afford a source of influence over, the ENTERPRISE named and described herein

which the defendants established, operated, controlled, conducted, and participated in the conduct

of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims,

and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code,

Section 1963(a)(2);

       iii.    have property constituting and derived from proceeds obtained, directly and

indirectly, from racketeering activity, in violation of Title 18, United States Code, Section 1962,

which property is subject to forfeiture to the United States pursuant to Title 18, United States

Code, Section 1963(a)(3),

    46. The interests of the defendants subject to forfeiture to the United States pursuant to

Title 18, United States Code, Section 1963(a)(1), (a)(2), and (a)(3), include but are not limited to:

    a.    at least $4.5 billion dollars;
        Recreational vehicle with VIN number 5B4MP67G023338413;
        Recreational vehicle with Florida license tag number S53-8XW;
        Recreational vehicle with Florida license tag number S79-7KJ;
        PT Cruiser with VIN number 3C8FY4BB41T586360;
        PT Cruiser registered to Mobile Promotions or William Lenis;
        PT Cruiser with Florida license tag number V65-TAG;
        Humvee with serial number 5GRGN23US4H116407;
        Humvee with serial number 5GRGN23US74H120068;
        Vehicle trailer VIN number 4DFTS10122N050735
        Dell Latitude laptop computer, serial number 25633081;
        Gateway laptop computer, serial number 0027465903;
        Gateway laptop computer serial number 0015533205;
        Gateway laptop computer serial number 002804106; and
        Sprint cell phone assigned number 305-527-6674, forfeitable
        pursuant to Title 18, United States Code, Sections 1963(a)(1) and
        1963(a)(3);

    b.    all right, title and interest in BETONSPORTS PLC and its
        subsidiaries and affiliates identified in paragraph 17 of this
        Indictment, forfeitable as each convicted defendant's interest in the
        ENTERPRISE pursuant to Title 18, United States Code, Section
        1963(a)(2)(A);

    c.    all right, title and interest in those entities identified in paragraph 19
        of this Indictment, forfeitable as each convicted defendant's interest
        in the ENTERPRISE pursuant to Title 18, United States Code,
        Section 1963(a)(2)(D);

47. If any of the property described in paragraphs (ii) and (iii) above, as a result of any act or omission of a defendant --

(1) cannot be located upon the exercise of due diligence;

(2) has been transferred or sold to, or deposited with, a third party;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value;  or

(5) has been commingled with other property which cannot be divided without

difficulty;

the court shall order the forfeiture of any other property of the defendants up to the value of any property set forth in paragraphs 45 and 46 above.

48. The above-named defendants, and each of them, are jointly and severally liable for the forfeiture obligations as alleged above.

All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL

_____

FOREPERSON

CATHERINE L. HANAWAY
UNITED STATES ATTORNEY

_____

MICHAEL K. FAGAN #6617
Assistant United States Attorney

_____

MARTY WOELFLE AZ Bar #009363
Trial Attorney
Organized Crime and Racketeering Section

26