1       IN THE UNITED STATES DISTRICT COURT
     FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION
2

3


4   UNITED STATES OF AMERICA,          )
                                       )
5               PLAINTIFF,             )
                                       )
6                                      )
                   vs.                 ) Case No.  4:06-CR-337-CEJ
7                                      )
    BETONSPORTS, PLC, ET AL.,          )
8                                      )
                DEFENDANTS.            )
9                                      )
    - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
10

11

12

13           BEFORE THE HONORABLE CAROL E. JACKSON
                UNITED STATES DISTRICT JUDGE
14             CHANGE OF PLEA HEARING
                  APRIL 1, 2009
15

16

17

18

19

20

21

22   COURT REPORTER:       GARY BOND, RMR, RPR
                          THOMAS F. EAGLETON COURTHOUSE
23                        111 S. TENTH STREET, THIRD FLOOR
                          ST. LOUIS, MISSOURI 63102
24                        314.244.7980

25

1                              APPEARANCES

2

3

4   FOR THE PLAINTIFF:

5                   U. S. ATTORNEY'S OFFICE
                    BY:  STEVEN HOLTSHOUSER, ESQ.
6                        STEVEN MUCHNICK, ESQ.
                         JOHN BODENHAUSEN, ESQ.
7                   101 S. 10TH STREET, SUITE 2000
                    ST. LOUIS, MISSOURI  63102
8                   314.539.2200
                    STEVEN.HOLTSHOUSER@USDOJ.GOV
9

10  FOR THE DEFENDANT,
    DAVID CARRUTHERS:   ROSENBLUM & SCHWARTZ
11                  BY:   SCOTT ROSENBLUM, ESQ.
                          GILBERT SISON, ESQ.
12                  120 S. CENTRAL AVENUE, SUITE 130
                    314.862.4332
13                  SROSENBLUM@RSRGLAW.COM

14

15

16

17

18

19

20

21

22

23

24

25

ST. LOUIS, MISSOURI; APRIL 1, 2009

11:17 a.m

THE COURT:   Good morning.

MR. ROSENBLUM   Good morning, Your Honor.

MR. HOLTSHOUSER:   Good morning, Judge.   You should have on your desk in front of you there the original signed copies of the Plea Agreement Guideline Recommendations and Stipulations and then a Memorandum of Agreement that is incorporated in that document.

THE COURT:   All right.   Thank you.   And neither of these is to be filed under seal; is that correct?

MR. HOLTSHOUSER:   That is correct.

THE COURT:   Okay.   This is United States v. David Carruthers, and it's before the Court for a change of plea to Count 1 of the Third Superseding Indictment.

Mr. Carruthers, have you received a copy of the Third Superseding Indictment?

THE DEFENDANT:   Yes, Your Honor.

THE COURT:   In Count 1, you are charged with violating Title XVIII United States Code Section 1962(d), in that you were allegedly employed or associated with an enterprise affecting interstate or foreign commerce known as the BetonSports organization; and that you conspired with others to participate in or to conduct the affairs of the enterprise through a pattern of racketeering activity that

1    consisted of multiple acts involving gambling offenses in

2    violation of the statutes in Missouri and of other states and

3    acts that were indictable under federal statutes governing

4    the use of wire communication to transmit waging information;

5    mail fraud; wire fraud; interstate travel in aid of

6    racketeering; interstate transportation of gambling

7    paraphernalia; operation of an illegal gambling business; and

8    money laundering.

9            Do you understand the charge in Count 1?

10           THE DEFENDANT:  Yes, Your Honor.

11           THE COURT:  What is your plea to that charge?

12           THE DEFENDANT:  I plead guilty.

13           THE COURT:  I have to ask you some questions before

14   I can accept your guilty plea.  Please let me know if you

15   don't understand a question or if you want me to repeat

16   something.

17           THE DEFENDANT:  Okay.

18           THE COURT:  If you want to talk to your lawyers

19   before you give an answer, let me know; and I'll give you

20   time to speak with them  All right?

21           THE DEFENDANT:  Thank you.

22           THE COURT:  You're welcome.  Before we continue, the

23   clerk is going to give an oath to you.  So please raise your

24   right hand.

25           (Whereupon, the defendant was sworn.)

1          THE COURT:  You have to give true answers to my

2    questions.  If you don't answer truthfully, you could be

3    prosecuted for perjury or for making a false statement; do

4    you understand?

5          THE DEFENDANT:  I understand.

6          THE COURT:  Mr. Carruthers, how old are you?

7          THE DEFENDANT:  I'm 51.

8          THE COURT:  And how far did you go in school?

9          THE DEFENDANT:  I qualified in the Master's Degree

10   in the Business Administration in 1995, but I didn't go

11   beyond high school.  I did the Master's Degree part time as a

12   mature student.

13         THE COURT:  I see.  All right.  Do you have any

14   health problems?

15         THE DEFENDANT:  Not that I am aware of.

16         THE COURT:  In the last 24 hours, have you taken any

17   prescription medicine or over-the-counter medicine?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Have you drunk any alcoholic beverages

20   or used any illegal drugs in the last 24 hours?

21         THE DEFENDANT:  I had a glass of wine last night.

22         THE COURT:  Anything else?

23         THE DEFENDANT:  No.

24         THE COURT:  How are you feeling this morning?

25         THE DEFENDANT:  I'm fine.

1          THE COURT:   Have you ever been treated for a mental
2  illness?
3          THE DEFENDANT:   No.
4          THE COURT:   Have you ever consulted a mental health
5  professional for any reason?
6          THE DEFENDANT:   No.
7          THE COURT:   Do you understand why you're here today?
8          THE DEFENDANT:   Yes.
9          THE COURT:   And do you understand the purpose of
10 this hearing?
11          THE DEFENDANT:   Yes.
12          THE COURT:   Mr. Rosenblum, do you have any reason to
13 doubt your client's mental competence?
14          MR. ROSENBLUM   None whatsoever, Your Honor.
15          THE COURT:   Mr. Carruthers, have you had enough time
16 to talk to your lawyers about this case?
17          THE DEFENDANT:   Yes.
18          THE COURT:   And have you talked to them about
19 whether or not you should plead guilty?
20          THE DEFENDANT:   Yes.
21          THE COURT:   Are you satisfied with the legal
22 representation that you've received?
23          THE DEFENDANT:   It's been excellent, Your Honor.
24          THE COURT:   Do you understand that by pleading
25 guilty you are giving up your right to a speedy and public

1    jury trial?

2              THE DEFENDANT:  Yes.

3              THE COURT:  If there were a trial, you would be

4    entitled to the presumption of innocence.  You would not have

5    the burden of proving to the jury that you are innocent; do

6    you understand?

7              THE DEFENDANT:  I understand.

8              THE COURT:  The government would have the burden of

9    proving your guilt beyond a reasonable doubt if there were a

10   trial; do you understand?

11             THE DEFENDANT:  Yes, Your Honor.

12             THE COURT:  You would have the right to be present

13   in the courtroom throughout the trial; do you understand?

14             THE DEFENDANT:  Yes.

15             THE COURT:  You would also have the right to

16   cross-examine all of the government's witnesses; do you

17   understand?

18             THE DEFENDANT:  Yes.

19             THE COURT:  You would have the right to call

20   witnesses to testify in your defense at a trial?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Do you understand?

23             THE DEFENDANT:  (Nods head.)

24             THE COURT:  If you needed the Court to issue

25   subpoenas or to otherwise compel your witnesses to come here,

1    the Court would provide that service to you free of charge;

2    do you understand?

3         THE DEFENDANT:  Yes.

4         THE COURT:  If there were a trial, you would have

5    the right to testify and the right not to testify; do you

6    understand.

7         THE DEFENDANT:  Yes.

8         THE COURT:  If you chose not to testify at the

9    trial, the jury could not hold that against you.  And the

10   jury could not take that into considerations in deciding

11   whether you are guilty or not guilty; do you understand?

12        THE DEFENDANT:  I understand.

13        THE COURT:  The next time you come to court will be

14   for sentencing.  You will not have a trial; do you

15   understand?

16        THE DEFENDANT:  I understand.

17        THE COURT:  You will have to answer questions that

18   I'm going to ask you about this offense, and you will have to

19   admit that you committed the crime charged in Count 1; do you

20   understand?

21        THE DEFENDANT:  I understand.

22        THE COURT:  Mr. Carruthers, do you understand all of

23   the rights that you're giving up by pleading guilty?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Now that you know what you're giving up,

1    do you still want to plead guilty?

2            THE DEFENDANT:   Yes.

3            THE COURT:   Has anyone made any threats to you to

4    try to force you to plead guilty?

5            THE DEFENDANT:   No.

6            THE COURT:   Do you feel that you have been pressured

7    in any way to plead guilty?

8            THE DEFENDANT:   No, Your Honor.

9            THE COURT:   I know that you and the government have

10   a plea agreement, and I am going to get to that in just a

11   moment; and that plea agreement addresses the agreement that

12   you all had with respect to sentencing.

13           Has anyone reached any agreement with you or

14   promised you anything regarding the sentence you will receive

15   beyond what's in the Memorandum of Agreement and the plea

16   agreement?

17           THE DEFENDANT:   No, Your Honor.

18           THE COURT:   Are you pleading guilty voluntarily?

19           THE DEFENDANT:   Yes, Your Honor.

20           THE COURT:   Mr. Carruthers, I'd like you to take a

21   look at these two documents.   One of them is called

22   "Memorandum of Agreement."   The second document is called

23   "Plea Agreement Guidelines, Recommendations and

24   Stipulations."   Does your signature appear at the end of each

25   of these documents?

1          THE DEFENDANT:   Yes, Your Honor.

2          THE COURT:   Before you signed these documents, did

3     you read them?

4          THE DEFENDANT:   Yes, Your Honor.

5          THE COURT:   Did you also review them with your

6     lawyers?

7          THE DEFENDANT:   Yes.

8          THE COURT:   And have they answered all of your

9     questions about these documents to your satisfaction?

10          THE DEFENDANT:   Completely.

11          THE COURT:   Do you understand what these documents

12     say?

13          THE DEFENDANT:   Yes.

14          THE COURT:   And do these documents contain all of

15     the agreements between you and the government relating to

16     this case?

17          THE DEFENDANT:   Yes, Your Honor.

18          THE COURT:   Has anyone reached any agreement with

19     you pertaining to this case that is not contained in these

20     documents?

21          THE DEFENDANT:   No, Your Honor.

22          THE COURT:   Okay.   Let's start with the plea

23     agreement.

24          According to the plea agreement, in exchange for

25     your guilty plea to Count 1 of the Third Superseding

1    Indictment, the government has agreed that it will move to

2    dismiss Counts 2 through 5 and Counts 17 through 19 against

3    you at sentencing; is that correct?

4              THE DEFENDANT:   That's correct.

5              THE COURT:   The government has also agreed that it

6    will not bring any further federal prosecution against you in

7    the Eastern District of Missouri relative to your

8    participation in the BetonSports organization, as described

9    in the Third Superseding Indictment.   Is that also a correct

10   statement of what the government has agreed to do?

11             THE DEFENDANT:   Yes, Your Honor.

12             THE COURT:   Now, in this document, you have agreed

13   to give up your right to appeal all nonjurisdictional issues

14   in this case; is that correct?

15             THE DEFENDANT:   That's correct, Your Honor.

16             THE COURT:   Now, this is where things get a little

17   unclear for me.

18             MR. HOLTSHOUSER:   Should I try to summarize, Your

19   Honor?

20             THE COURT:   Well, let me just ask this:   On page

21   four of the plea agreement, Paragraph B, it provides that "If

22   the Court accepts the plea and applies the recommendations

23   agreed to by the parties," are you referring to the

24   recommendation regarding the sentence?   Not the

25   recommendations regarding the guidelines but the

1    recommendation regarding the sentence?

2         MR. HOLTSHOUSER:  Yes, Your Honor.  And this is in

3    the section regarding Waiver of Appeal.  There are three

4    components to the waiver of appeal; one being nonsentencing

5    issues and other being sentencing issues.  And this language

6    is no different in this document than it is in the standard

7    plea agreement that you're familiar with.

8         THE COURT:  Right.  I understand.  But the

9    difference here is that the parties have reached an agreement

10   with respect to a recommendation that will be made regarding

11   sentencing in this case.

12        MR. HOLTSHOUSER:  It would apply to that, Your

13   Honor.

14        THE COURT:  Okay.  I just wanted to make it clear,

15   because the plea agreement also contains recommendations

16   regarding the guidelines --

17        MR. HOLTSHOUSER:  Correct.

18        THE COURT:  -- which, based on what you all are

19   recommending are the guidelines, the sentencing range is much

20   higher than what will actually be recommended.

21        MR. HOLTSHOUSER:  Correct.

22        THE COURT:  And I just wanted to clarify that.

23   Okay.

24        So your agreement is that if the recommendation

25   regarding the sentence, as reflected in the Memorandum of

1  Agreement, is followed by the Court, then the defendant

2  waives his rights to appeal that sentence?

3         MR. HOLTSHOUSER:  Correct.

4         MR. ROSENBLUM  That's correct.

5         MR. HOLTSHOUSER:  And that recommendation is

6  essentially that, if you don't go above that sentence, then

7  that recommendation is in effect fulfilled.

8         THE COURT:  All right.

9         MR. ROSENBLUM  Correct.

10        MR. HOLTSHOUSER:  Anything within that range

11 constitutes a sentence within the recommendations of the

12 parties.

13        THE COURT:  Okay.  That's fine.

14        Now, Mr. Carruthers, is that your understanding as

15 well?  That is, if the Court imposes I sentence based on the

16 recommendation contained in the Memorandum of Agreement,

17 which would be a range of 33 months to 41 months in prison --

18        MR. ROSENBLUM  No.

19        THE COURT:  Okay.

20        MR. HOLTSHOUSER:  What page do you see the 32 to 41,

21 Your Honor?

22        THE COURT:  Well --

23        MR. HOLTSHOUSER:  I think it was 33 months.

24        THE COURT:  I'm sorry.  Excuse me?

25        MR. ROSENBLUM  It is essentially an agreement with

1      a ceiling of 33 months, which allows us to submit to the

2      Court 3553 factors, other than diminished capacity, so that

3      the Court could consider a sentence of less than 33 months

4      with no floor.  And the government reserves its right to

5      appeal -- I'm sorry -- to oppose.

6              THE COURT:  Right.  Okay.

7              MR. HOLTSHOUSER:  The section you're questioning

8      about is waiver of appeal.  Mr. Carruthers essentially waives

9      his rights to appeal whatever sentence you impose, as long as

10     he's sentenced to 33 months or less is the way I would

11     understand it.

12             MR. ROSENBLUM  Correct.

13             MR. HOLTSHOUSER:  The way this operates, as far as

14     waiver of appeal goes.

15             The remaining agreements are contained within the

16     Memorandum of Agreement and within the operative language, I

17     think, is also on page two.

18             THE COURT:  Okay.  See, that's what --

19             MR. HOLTSHOUSER:  The second paragraph of the Plea

20     Agreement section.  What is stated there, is basically

21     represented within the Memorandum of Agreement.

22             THE COURT:  Okay.  I just want to make sure that I

23     have this right, because that's not exactly what this

24     Paragraph B says in the plea agreement.  Let me try this

25     again.

1    Mr. Carruthers, my understanding is that you are

2   giving up your right to appeal the sentence that you receive

3   if that sentence is 33 months in prison or less?

4         THE DEFENDANT:  Yes, Your Honor.

5         THE COURT:  Okay.  Did I get it right that time?

6         MR. ROSENBLUM  Yes, Your Honor.

7         MR. HOLTSHOUSER:  I think you got it right from the

8   start, Judge.  So it's just a clarification.

9         THE COURT:  Okay.  Well, you've also agreed in this

10  document to give up your right to challenge your conviction

11  and sentence in any post-conviction proceeding, unless that

12  challenge is based on a claim of prosecutorial misconduct or

13  ineffective assistance of counsel.

14        THE DEFENDANT:  Yes, Your Honor.

15        THE COURT:  Is that right?  All right.  Now, in this

16  document, you are reserving your right to file a motion

17  asking for a sentence below 33 months; is that correct?

18        THE DEFENDANT:  Yes, Your Honor.

19        THE COURT:  And the government has stated that it

20  may oppose that motion --

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  -- is that your understanding?  Okay.

23        MR. ROSENBLUM  Judge, subject to the one

24  limitation, which is that we've agreed not to ask the Court

25  to consider any issues pursuant to what would be 5(k)(213) or

1    diminished capacity.

2            MR. HOLTSHOUSER:   And one other qualification,

3    Judge, I think is important with respect to that is that 5(k)

4    motion which the agreement contemplates only operates down to

5    33 months.

6            The only thing operable after that that

7    Mr. Carruthers can request would be pursuant to 3553(a),

8    subject to that limitation that Mr. Rosenblum referenced,

9    which means not for anything regarding diminished capacity.

10            THE COURT:   All right.  So, Mr. Carruthers, if you

11    do request a sentence below 33 months, that request cannot be

12    based on a claim of diminished capacity or -- what was the

13    other one?

14            MR. HOLTSHOUSER:   Substantial assistance.

15            THE COURT:   -- or substantial assistance.

16            THE DEFENDANT:   I understand, Your Honor.

17            MR. ROSENBLUM   Substantial assistance.

18            THE COURT:   And there is no property subject to

19    forfeiture with respect to this defendant; is that correct?

20            MR. HOLTSHOUSER:   Not that we're aware of, Your

21    Honor.

22            MR. ROSENBLUM   No, Your Honor.

23            THE COURT:   All right.  Now, turning to this

24    Memorandum of Agreement, in this Memorandum of Agreement,

25    Mr. Carruthers, the government has again agreed to dismiss

1    Counts 2 through 5 and 17 through 13 of the Third Superseding

2    Indictment against you at sentencing; is that correct?

3            THE DEFENDANT:  I understand.  Yes.  Your Honor.

4            THE COURT:  And the government has and you have

5    disagreed that you will not engage in any offshore United

6    States facing gambling business during the term of your

7    supervised release; is that correct?

8            THE DEFENDANT:  That's correct, Your Honor.

9            THE COURT:  You've also agreed that you will provide

10   truthful and complete cooperation to the government regarding

11   the BetonSports sports gambling operation.  Is that correct?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  And the government has agreed that all

14   cooperation that you provide will be relayed to the Court; is

15   that correct?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  All right.  And that provided you

18   provide substantial assistance, the government will file a

19   motion for a downward departure under the Sentencing

20   Guidelines asking that your sentence be 33 months in prison;

21   is that correct?

22           THE DEFENDANT:  Yes, Your Honor.  I understand.

23           THE COURT:  You have also agreed in this document

24   that if you are sentenced to a term of imprisonment, then,

25   after you are released from prison, you will not engage from

1   any occupation or business venture involving the operation of

2   a United States facing sports book; is that correct?

3          THE DEFENDANT:   That's correct, Your Honor.

4          THE COURT:   Okay.   Mr. Carruthers, do you understand

5   that the Court is not required to accept the government's

6   request of a sentence of not more than 33 months in prison?

7          THE DEFENDANT:   Yes, Your Honor.

8          THE COURT:   If I determine not to accept that

9   request and if I determine that you should receive a sentence

10  of imprisonment above 33 months, then I will let you know

11  that at sentencing; do you understand?

12         THE DEFENDANT:   I understand.

13         THE COURT:   And I will give you the opportunity at

14  that time to withdraw your guilty plea; do you understand?

15         THE DEFENDANT:   I understand.

16         THE COURT:   If you choose at that time not to

17  withdraw your guilty plea, then you will be exposing yourself

18  to a sentence above 33 months in prison.   Do you understand

19  that?

20         THE DEFENDANT:   I understand.

21         THE COURT:   Up to the statutory maximum for this

22  offense.   Do you understand that?

23         THE DEFENDANT:   Yes, Your Honor.

24         THE COURT:   Okay.   And, finally, do you understand

25  that the government's obligation to file the Motion for

1    Downward Departure depends on your conpliance with the terms

2    of this Memorandum of Agreement?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  If you don't comply with these terms,

5    then the government may be relieved of its obligation to file

6    the motion.

7              THE DEFENDANT:  I understand.

8              THE COURT:  Okay.  Referring again to the plea

9    agreement, on page seven of the document, there are

10   recommendations that you and the government are making to the

11   Court concerning the Sentencing Guidelines.  Do you

12   understand that I'm not required to follow these

13   recommendations?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  If I don't follow them, you will not

16   have the right to withdraw your guilty plea.  Do you

17   understand that?

18             THE DEFENDANT:  I understand.

19             THE COURT:  The Sentencing Guidelines are advisory.

20   I will consider the guidelines in determining your sentence,

21   but they will not be the only factor that I will consider; do

22   you understand?

23             THE DEFENDANT:  I understand.  Yes.

24             THE COURT:  Mr. Carruthers, the penalties for the

25   offense in Count 1 include a sentence of not more than 20

1    years in prison or a fine of not more than $250,000 or both;

2    do you understand?

3            THE DEFENDANT:   Yes.

4            THE COURT:   You may also be required to pay

5    restitution to any victim of this offense; do you understand?

6            THE DEFENDANT:   I understand.

7            THE COURT:   In addition to any fine or restitution

8    that may be ordered, there is a $100 assessment that you will

9    have to pay at sentencing; do you understand?

10           THE DEFENDANT:   I understand.

11           THE COURT:   If you receive a sentence of

12   imprisonment, then, after you are released from prison, you

13   will be placed on supervised release for a period of not more

14   than five years.   Do you understand?

15           THE DEFENDANT:   Yes, Your Honor.

16           THE COURT:   Conditions of supervised release will be

17   explained to you when you are sentenced, and you'll have to

18   follow all of those conditions.

19           Under some circumstances, the conditions can be

20   changed during the supervised release term or the term of

21   supervision can be shortened or lengthened; do you

22   understand?

23           THE DEFENDANT:   Yes, Your Honor.

24           THE COURT:   If you violate any condition, then your

25   supervised release term could be revoked.   If there is a

1    revocation, you could be sentenced to a term of imprisonment

2    equal to the length of the supervised release term, do you

3    understand?

4             THE DEFENDANT:   Yes, Your Honor.

5             THE COURT:   After you complete that sentence of

6    imprisonment, you could be placed on supervised release

7    again; do you understand?

8             THE DEFENDANT:   Yes, Your Honor.

9             THE COURT:   You will not be released on parole from

10   any sentence of imprisonment that you receive; do you

11   understand.

12            THE DEFENDANT:   Yes, Your Honor.

13            THE COURT:   And by pleading guilty, you are exposing

14   yourself to all of the penalties I've described to you; do

15   you understand.

16            THE DEFENDANT:   Yes, Your Honor.

17            THE COURT:   The Probation Office will complete a

18   Presentence Report that will be given to you and your lawyer

19   before sentencing.   You'll have the opportunity to read that

20   report and make objections to anything in it that you

21   disagree with.

22            After I rule on the objections, then I will

23   determine your sentence.   I will take into consideration the

24   information in the Presentence Report; other information that

25   you or the government provide to me before or at sentencing;

1    the Sentencing Guidelines; and all other factors that the law

2    requires me to consider; do you understand?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  Mr. Carruthers, do you have any

5    questions about the possible penalties that you are facing or

6    about anything that I've said to you this morning?

7              THE DEFENDANT:  No, Your Honor.

8              THE COURT:  Please tell me what you did in

9    connection with Count 1.

10             THE DEFENDANT:  Well, Your Honor, it was in July of

11   2000 that I joined BetonSports as an employee.  I was

12   recruited in the United Kingdom by Gary Kaplan, and I was to

13   lead the business in its growth strategies out the United

14   States and to prepare the business for an ultimate flotation

15   on the London Stock Exchange; something that I did in June,

16   2004.

17             As my role as Chief Executive, I progressively

18   became familiar and took control of the strategic and

19   day-to-day business operations of BetonSports and an

20   understanding of the business overall, including the U.S.

21   market.  I also assisted the business in a structured

22   reorganization and recruited senior staff and a Board of

23   Directors for the listing on the London Stock Exchange.

24             I understand and I know that the business activities

25   of BetonSports in some cases were illegal; and, therefore,

1    some of my actions as Chief Executive were also illegal

2    actions contravening the Wire Act and other U.S. gambling

3    laws.    Specifically, the business accepted sports bets from

4    United States customers by the telephone and Internet.

5              Additionally, it aggressively advertised its

6    services in the United States as legal and licensed; and it

7    furtively or covertly used money transfer service providers

8    to accept its customers' deposits and pay its customers'

9    winnings.

10             THE COURT:    Thank you.    Mr. Carruthers, I have a

11   couple of questions for you.    You said that you know that

12   some of the activities of BetonSports were illegal.    Did you

13   know that to be the case at the time you were involved with

14   the organization?

15             THE DEFENDANT:    Well, I was involved with the

16   organization for a period of six years.    So my knowledge and

17   understanding of these events was progressive.    I didn't

18   think that these activities were illegal when I joined the

19   business.    But sometime after that, it became unclear whether

20   it was or wasn't.    And then it became clear that it was.

21             THE COURT:    All right.

22             THE DEFENDANT:    Do you understand?

23             THE COURT:    I understand.    And you were involved

24   with other individuals.    You mentioned Mr. Kaplan -- Gary

25   Kaplan -- and other individuals connected with the

1    BetonSports organization?

2         THE DEFENDANT:  Yes, Your Honor.

3         THE COURT:  All right.  And according to the

4    indictment, you conspired with some individuals to violate

5    various state and federal laws in connection with the

6    BetonSports enterprise.

7         Did anyone force you to become involved in that

8    activity?

9         THE DEFENDANT:  No, I did this of my own free will.

10        THE COURT:  All right.  You were involved with the

11   BetonSports enterprise sometime between 1989 until July of

12   2006?  Or tell me --

13        THE DEFENDANT:  I only became involved in July of --

14   of 2000 and until I was relieved of my duties some time, I

15   think, in August of 2006.  That was after I was taken into

16   custody.

17        THE COURT:  All right.  And you were an officer of

18   the company?  Of BetonSports?

19        THE DEFENDANT:  I was the Chief Executive, and I was

20   a director of the PLC.

21        THE COURT:  Okay.  All right.  Mr. Carruthers, do

22   you still have a copy of the plea agreement?

23        THE DEFENDANT:  Yes.

24        THE COURT:  Please turn to page nine.  There is a

25   Paragraph 4 that reads "Stipulation of Facts Relative to

1    Sentencing."  Do you see where I'm reading?

2              THE DEFENDANT:   Yes.

3              THE COURT:   Beneath that heading is a Statement of

4    Facts that ends on page 18.

5              THE DEFENDANT:   Yes.   Yes, Your Honor.

6              THE COURT:   Did you read that Statement of Facts?

7              THE DEFENDANT:   Very carefully.

8              THE COURT:   And do you agree with that Statement of

9    Facts?

10             THE DEFENDANT:   Yes, Your Honor.

11             THE COURT:   Thank you.

12             Based on the defendant's statements under oath and

13   the stipulation, I find that the defendant is competent to

14   enter a plea of guilty; that he is pleading guilty

15   knowledgeably and voluntarily; and his guilty plea has a

16   factual basis establishing all of the elements of the offense

17   charged in Count 1 of the Third Superseding Indictment.

18             The Court will accept the defendant's guilty plea;

19   however, I will reserve judgment on whether or not to accept

20   the plea agreement.   I will make that determination at a

21   later time and will let you know that one way or the other at

22   sentencing, and we need a sentencing date.

23        (Whereupon, an off-the-record discussion took place.)

24             MR. HOLTSHOUSER:   I would suggest a date perhaps in

25   January.   And if a sooner date becomes viable, then the Court

1  would be aware of that and could reset this, I think.

2       THE COURT:  Well, here's what I prefer to do:  I

3  think I would rather do it sooner and set an earlier date.

4  And then if it has to be moved to a date after the trial of

5  the other defendants, then I can do that a lot more easily.

6       So why don't we say Friday, October 2nd at

7  10:00 o'clock.  And, again, I understand that Mr. Carruthers

8  has agreed, among other things, to provide testimony if

9  necessary; and the trial is scheduled to begin in September.

10  If the trial goes forward, then I'll delay the sentencing of

11  Mr. Carruthers until after he has completed his testimony or

12  the government determines that it's not going to be necessary

13  for him to testify.

14       Now, is there any objection to continuing the

15  defendant's release?

16       MR. HOLTSHOUSER:  There is not.

17       THE COURT:  All right.  Mr. Carruthers, all of the

18  conditions of your release will remain in effect.  I believe

19  you are under house arrest, and you're subject to electronic

20  monitoring as well.

21       THE DEFENDANT:  Yes, Your Honor.

22       THE COURT:  All right.  Those conditions will

23  continue along with the others.  One of the conditions of

24  your bond is that you appear as required.  If you violate

25  that condition, you could be charged with another crime.

1    Violation of any condition of the bond could result in a

2    revocation of your release and your incarceration; do you

3    understand?

4            THE DEFENDANT:  I understand.

5            THE COURT:  If you have any questions about the bond

6    conditions, you should talk to your lawyers or to the

7    Pretrial Services Office, and they should be able to answer

8    any questions you have.  Do you have any questions about the

9    bond conditions this morning?

10            THE DEFENDANT:  No, Your Honor.

11            THE COURT:  All right.  Is there anything else from

12   the government on this case?

13            MR. HOLTSHOUSER:  No, Your Honor.

14            THE COURT:  Mr. Rosenblum?

15            MR. ROSENBLUM  No, Your Honor.

16            THE COURT:  All right.  We're from recess.

17            MR. ROSENBLUM  Thank you.

18

19            (Proceedings concluded at 12:01 p.m.)

20

21                        *    *    *

22

23

24

25

UNITED STATES OF AMERICA                                    )
                                                           )     ss:
EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION             )

C E R T I F I C A T E

I, Gary Bond, Certified Shorthand Reporter in and for the United States District Court for the Eastern District of Missouri, do hereby certify that I was present at and reported in machine shorthand the proceedings had the 1st day of April, 2009, in the above mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys in this action, nor financially interested in the action.

I further certify that this transcript contains pages 1 through 27 and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

IN WITNESS WHEREOF, I have hereunto set my hand at St. Louis, Missouri, this 23rd day April, 2009.


                        /s/ Gary Bond
                        Gary Bond, RPR, RMR
                        Certified Shorthand Reporter